IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>EDDIE TORRES CONCEPCION [1],<br><br>Defendant. | CRIMINAL NO. 06-270 (JAG) |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Defendant Eddie Torres Concepción ("Torres") stands charged in a two (2) count Indictment for falsely assuming and pretending to be an officer and employee of the United States acting under the authority thereof, that is a Federal Law Enforcement Officer, with the intent to defraud, to demand and obtain $40,000.00 from a citizen by reporting that the monies were being seized as part of a federal money laundering investigation in violation of 18 U.S.C. §§ 912 and 2.  Defendant is also charged with being a state law enforcement officer, did unlawfully obstruct, delay and affect the movement of articles in commerce, by extortion, by knowingly obtaining $40,000.00 from a citizen by reporting to that citizen that the monies were being seized as part of a federal money laundering investigation, and as such, monies were not due them or their office and were obtained from this citizen with his consent, induced under color of official right, in violation of 18 U.S.C. §§ 1951 and 2.

On February 26, 2007, Torres filed a "Motion to Suppress Identification by Photo Array and Latent Prints" claiming there is a due process violation from the photo array because it was

done nine (9) months after the events and, as such, was suggestive.  In addition, defendant claims the identification testimony is unreliable under the factors enumerated in Neil v. Biggers, 409 U.S. 188 (1972) and the latent finger prints are unreliable because they were taken from movable objects. (Docket No. 44).  Thereafter, the  government filed its "Opposition to Defendant's Motion to Suppress Identification by Photo Array and Latent Prints" arguing that the passage of nine (9) months before the photo lineup took place does not invalidate the results and makes the identification impermissible.  As to the latent fingerprints, the government claims the jurisprudence cited by defendant is inapplicable because the government in this case does not rely on the fingerprint evidence alone. (Docket No. 49).   The suppression issue was referred to the undersigned Magistrate Judge for report and recommendation. (Docket Nos. 45 and 46).

## FACTUAL BACKGROUND

Upon the court's referral of above defendant's Motion to Suppress, the evidentiary hearing was held on April 19, 2007 and June 15, 2007, wherein the government presented the testimony of SA Palo de Robles from the Immigration and Customs Enforcement Office of Professional Responsibility.  The defense presented no documentary evidence nor witnesses on defendant's behalf.[1]

---

[1] The defense had the opportunity to subpoena the victim for the second day of the suppression hearing but decided against it.

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page  3

### Testimony of SA de Robles.

SA de Robles testified he is employed as a criminal investigator with the Department of Homeland Security with the Immigration and Customs Enforcement Office of Professional Responsibility in San Juan, Puerto Rico for twelve (12) to thirteen (13) years. SA de Robles has investigated numerous cases including money laundering cases, drug cases and violations of employees' corruption. SA de Robles has been to two (2) law enforcement academies and has received other training on investigation techniques.

SA de Robles was involved in the investigation of defendant Torres. After SA de Robles identified defendant as a suspect in the investigation he did a photo line up of the defendant. In relation to the incident of September 21, 2005, the office received on September 28, 2005 a report about a seizure of $40,000.00. When the report arrived, SA de Robles initiated the investigation based on the information received. SA de Robles interviewed the victim, Luis Pantojas ("Pantojas"), on November 28, 2005 and on February 28, 2006, as well as on other occasions.

SA de Robles wrote a report of the first interview or initial contact with the victim on November 28, 2005. This first interview was performed to gather preliminary facts to see if there was enough foundation to continue the investigation. On November 28, 2005, Pantojas explained he was in route in a Lincoln Navigator with co-defendant Noel Rosario ("Rosario"), who was a local police officer, to Carolina to purchase a business and he had in his possession $40,000.00 in cash. In route to the location, an unmarked vehicle (which was driven by an unknown police officer and another individual later identified as defendant Torres on the

passenger side) pulled them over and both the driver and passenger stepped out of the vehicle. The driver approached Pantojas and asked him to step out of the vehicle. When Pantojas stepped out of the vehicle, the driver explained to Pantojas that he was being investigated for money laundering and he was being followed for two (2) weeks and requested to search Pantojas' vehicle. This incident took place on September 21, 2005 at 8:30 pm and it lasted 30 to 35 minutes.

The report of the November 28, 2005 interview states the description provided by Pantojas was that both individuals who approached the victim were dressed in law enforcement dark tactical uniforms with weapons. The victim stated that on September 21, 2005 in route to Carolina, the passenger in his car (co-defendant Rosario) was constantly making phone calls and in one occasion Rosario asked Pantojas to take him to an ATM machine. When they stopped at the ATM machine, Pantojas noticed Rosario was also making phone calls.

Based on this information, SA de Robles subpoenaed Rosario's telephone number and the results of the subpoena showed that the only person Rosario was calling at the time was defendant Torres. SA de Robles also subpoenaed the records for the ATM machine which also showed that Rosario's account number withdrew $500.00 from the machine and, when compared with the toll records of Torres, they show that at that precise moment (when Pantojas saw Rosario talking on the phone at the ATM machine) Rosario was talking to Torres.

Pantojas was interviewed by SA de Robles on February 28, 2006 and no report was prepared by SA de Robles for this interview. At this interview, Pantojas described the two (2) individuals who pulled him over on September 21, 2005 as follows: the driver was six (6) feet,

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page  5

heavy set, fat, dark complexion in his 30s to 40s, and described the passenger, later identified as defendant Torres, as five (5) foot six (6) inches, 225 to 250 pounds, fat, round face, brown complexion, 30 to 40 years old and had holes in his face.

Based on the phone toll records analysis and the description provided by the victim on February 28, 2006, SA de Robles concluded that the primary suspect was defendant Torres. Based on this conclusion, SA de Robles was able to develop a photo line up on June 23, 2006. The photo lineup took place according to the guidelines of the agency which request that the lineup consist of six (6) photos and only (1) one of the photos should be of the suspect.  None of the photos should be suggestive in any manner and must be similar in sex, age, race, complexion, among others, and when it is presented to the victim there is a preamble on the back of the photo lineup which must be read by the agent to the person stating that the person will be looking at a group of photos, the photos may or may not contain a photo of the suspect and ask the person to review the photos and point to the photo of the person who was involved in the crime.

SA de Robles identified Exhibit 1 as the information displayed on the back of the photo lineup shown to Pantojas in this case and paragraph number six (6) states what has to be read verbatim before showing the photo lineup which reads as follows:

> In a moment I am going to show you a group of photographs.  This group of photographs may or may not contain a picture of the person who committed a crime now being investigated.  Keep in mind that hair styles, beards, and mustaches may be easily changed. Also, photographs may not always depict the true complexion of a person - it may be lighter or darker than shown in the photo.  Pay no attention to any markings or numbers that may appear in the photos or any other differences in the type or style of the photographs.  When you have looked at all the photos, tell me whether or not you see the person who

committed the crime.  Do not tell other witnesses that you have or have not identified anyone.

This was the photo lineup procedure and script which was followed on June 23, 2006 by SA de Robles.  SA de Robles did not say anything else to Pantojas besides the above statement at the time the photo lineup was performed.

SA de Robles identified Exhibit 2 as a photocopy of the photo display which was shown to Pantojas on June 23, 2006.  After Pantojas reviewed each photo, SA de Robles asked him to point to the photo of the person who was involved in the crime and he pointed to photo number two (2), which was a photo of defendant Torres.  SA de Robles then asked Pantojas to initial and date the photo and put the time.  SA Robles then placed his initials and dated it.  In addition, another agent --who acted as a witness-- also initialed and dated the photo.  Nothing else was done by SA de Robles, nor by anyone else present in the room, to suggest that photo number two (2) was defendant Torres.  After Pantojas identified photo number two (2), SA de Robles proceeded to write a report of investigation ("ROI").

On cross examination, SA de Robles testified his contact with Pantojas started on November 28, 2005.  Prior to that, the Resident Agent in Charge from the office of SA de Robles received a phone call from Teresita Cruz of the fines, penalties and forfeiture office of the Department of Homeland Security, and this information was passed along to SA de Robles.  The information was provided by a person who was not involved in the incident.

SA de Robles made a report in relation to the interview of Pantojas conducted on November 28, 2005 and Pantojas provided a written statement on said date describing the

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page 7

defendants as wearing dark uniforms and weapons. SA de Robles did an ROI of the interview of Pantojas on November 28, 2005.

SA de Robles did not write a report of the interview of Pantojas on February 28, 2006 when Pantojas provided an oral description of the defendants. Pantojas did not give a written description of Torres as being fat, round face, five (5) feet and six (6) inches, 30 to 40 years of age, brown complexion, this was an oral statement on February 28, 2006. This description was committed in writing by SA de Robles because he put it in his field notes.

SA de Robles interviewed Pantojas on other occasions for which there are three (3) statements for December 22, 2005, January 5, 2006 and March 14, 2006.[2] Upon a review of Identifications A, B and C, SA de Robles testified that Pantojas' statement of December 22, 2005 (*Id.* A) indicates that the "federales" were dressed all in black with guns at the sides, black belts and shoes and looked-like in police boots and they had an insignia on the shoulder, both were dressed the same and had a badge, they looked like puertorricans and did not dominate the English language. No description of the defendants was given by Pantojas in Ids. B and C.

SA de Robles testified that, the first time he interviewed Pantojas on November 28, 2005, Pantojas provided an oral statement describing the incident and a description of defendant Torres as wearing a black uniform, black boots, insignia on uniform, among others,

---

[2] The defense presented as identifications three affidavits of Pantojas which were marked as Ids. A, B and C. The defense moved for the admission of these three (3) documents as exhibits without properly laying a foundation. The court requested defense counsel to lay the proper foundation and identify the purpose of the documents through the testimony of SA de Robles. Defense counsel posed some additional questions but later failed to move the court for the admission as exhibits of these three (3) documents. Accordingly, these three (3) identifications were never admitted as exhibits in this case.

of which SA de Robles took three (3) pages of field notes. On December 22, 2005, Pantojas committed his statements into writing. SA de Robles considers everything stated by a victim of an investigation as important.

SA de Robles cannot provide for an explanation as to why he did not ask Pantojas for a physical description of the defendants when he first interviewed Pantojas on November 28, 2005. The first time he asked for specific details was on February 28, 2006.

On January 2006, SA de Robles had identified defendant Torres through the toll records analysis. SA de Robles knew defendant Torres for a few years back when he was assigned to HIFCA. SA de Robles obtained a subpoena of Rosario's telephone on January 20, 2006 and he identified the telephone numbers of the phones which were involved the night of the events, including the telephone of defendant Torres. On February 28, 2006, SA de Robles asked Pantojas to come to his office to provide a precise description of both subjects who were involved in the incident.

SA de Robles identified Exhibit D as a one page field notes of February 28, 2006 making reference to suspect number two (2) who was the passenger. Pantojas stated that both police officers got out of the unmarked vehicle which had flashing lights and tinted glasses. Pantojas identified the driver as the one who approached him, asked for the documents and went around the car. Pantojas described defendant Torres as the passenger (suspect number two (2)).

SA de Robles made a photo array of six (6) police officers using six (6) photos of persons with similar appearance pursuant to the agency's guidelines. The only photo available of

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page 9

defendant Torres was in a police uniform, therefore, the other five (5) photos used in the photo array were of male police officers in uniforms in order to be similar to the photo of defendant Torres. After defendant Torres was identified by SA de Robles as a possible suspect based on the physical description provided by the victim before the photo lineup, SA de Robles requested a photo of defendant Torres and five (5) other photos similar in his appearance. Upon the request of SA de Robles, the local internal affairs office provided the photo of defendant Torres, along with the five (5) other photos. Prior to this, SA de Robles had no photo of defendant Torres. SA de Robles stated it is not necessary to have the age nor the height of a possible suspect to do a photo lineup. SA de Robles had a description of defendant with curly black hair, but he did not consider hair in preparing the photo lineup because, pursuant to the guidelines, he needs to consider six (6) photos of which one (1) is of the suspect and the photos should not be suggestive and they should portray individuals of the same age range, race, complexion, among others. If SA de Robles would have had a photo of defendant Torres with curly hair, the other five (5) photos used in the photo array would have been of individuals with curly hair. Since the only photo SA de Robles had of defendant Torres was in police uniform, he used other five (5) photos of five (5) male police officers in uniform which are similar in appearance. SA de Robles believes, in his perception, that defendant Torres is of dark complexion. All the photos of the photo lineup showed individuals with the same skin complexion and all the photos were colored photos. SA Robles stated Pantojas never told him that he knew by name and last name defendant Torres before the date of the events. SA de

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page  10

Robles verified defendant Torres did not know Pantojas.  Defendant Torres and co-defendant Rosario knew each other for some time back.   If the victim would have known defendant Torres, there would have been no need to conduct the photo array.  The victim only knew co-defendant Rosario.  The decision to use a photo array was made by SA de Robles as an investigative step.

SA de Robles did visit the site of the events where the victim saw defendant Torres on September 21, 2005.  SA de Robles did not take any measurements at the site and did not verify any distance because there was no need.  The statements made by the victim and other evidence gathered through the investigation showed defendant Torres was at the crime scene on September 21, 2005.  The only person the victim knew at the time of the events was co-defendant Rosario.  If the victim would have known defendant Torres before the events took place, he would have told SA de Robles at his interview.  Defendant Torres was identified by SA de Robles as a suspect prior to the photo lineup through the toll records analysis.  It took the victim not less than five (5) and not more than ten (10) minutes to analyze each of the photos of the photo lineup and point out defendant Torres.

SA de Robles received the vehicle identification from the victim on the first interview of November 28, 2005 and the customs form was turned in about five (5) days after that first interview.  Both documents were in the victim's possession when they were handed to SA de Robles.  SA de Robles provided to the victim a receipt for both documents.

# ANALYSIS

**A.    Photo Line Up.**

In considering defendant's request to suppress the witness' identification at the line-up as the individual who perpetrated the robbery, in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 1128 (1969), the Supreme Court held "the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law." Still, undue suggestiveness alone does not require suppression; rather, a court must consider "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *See* Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382 (1972).

In Biggers, the Supreme Court held that the factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.* at 199-200, 93 S.Ct. 375. Thomas v. Varner, 428 F.3d 491, 503 (3rd Cir. 2005).

Similarly, the Court of Appeals for the First Circuit in Judd v. Vose, 813 F.2d 494, 498 (1st Cir. 1987) affirmed that identification based on an in-court eyewitness identification following a pretrial photographic identification must be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page  12

likelihood of irreparable misidentification." *See* Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971 (1968).  However, even if the pretrial photographic identification procedure was impermissibly suggestive, identification testimony will not be excluded if the identification otherwise possesses sufficient aspects of reliability.  *See* Manson v. Braithwaite, 432 U.S. 98, 113-14, 97 S.Ct. 2243, 2252-53 (1977); Neil v. Biggers, 409 U.S. at 199.

In the instant case, upon the evidence developed at the hearing before the undersigned Magistrate Judge, credibility determinations of the testimony of the only witness presented, who was not impeached or contradicted by defendant's submissions, there was no indicia of suggestive identification during the photo line-up proceedings. [3]  Once suggestive identification is present, then the court examines if under the totality of the circumstances the identification was reliable.  We need not ponder at this second step since suggestiveness was not evidenced nor established by herein defendant.  *See* United States v. Guzmán Rivera, 990 F.2d 681, 683 (1st Cir. 1993) (determining if the identification procedure used is not impermissibly suggestive, the Court need not address whether the identification was nevertheless reliable).

Nonetheless, in an abundance of caution, this Magistrate Judge nevertheless determines under the Bigger's factors for finding reliability, and the undisputed evidence at the hearing presented through the testimony of SA de Robles, the identification in the instant case would also be considered reliable.  The photo lineup conducted in this case was not suggestive as

---

[3] The findings of the court after a hearing on a pretrial motion to suppress are binding unless they are clearly erroneous. United States v. de Jesús-Ríos, 990 F.2d 672, 677 (1st Cir.1993). United States v. Hernández-Rodríguez, 443 F.3d 138. (1st Cir. 2006) (credibility determinations in a report and recommendation should not be rejected by the Court without hearing the evidence examined by the Magistrate Judge).

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page 13

averred by the defense. To determine whether the identification procedure is so suggestive as to create a substantial risk of misidentification, we must examine the procedure in light of "the totality of the circumstances." United States v. Emanuele, 51 F.3d 1123, 1128 (3rd Cir. 1995); United States v. Dowling, 855 F.2d 114, 117 (3d Cir. 1988).

The victim in this case had ample time to see defendant Torres since the events lasted about thirty five (35) minutes. No evidence was presented that the victim did not have a clear view of defendant at the time of the commission of the offense. There was no evidence presented at the hearing to suggest Pantojas did not have a good look of the perpetrators and was not at a close range to make an identification from the photo array. The physical description provided by the victim was reasonably adequate and accurate.

There is certainty that Pantojas identified defendant Torres without doubts at a properly conducted photo line-up proceeding following the agency guidelines. It is uncontested that the photo lineup in this case was conducted by SA de Robles following the agency guidelines for this procedure. It is uncontested that the manner in which Pantojas viewed the photo lineup was not suggestive and also followed those guidelines. SA de Robles told Pantojas to analyze each photo and point to the photo of the person who was involved in the crime. SA de Robles, nor anyone else, told anything else to Pantojas at the time the photo lineup was conducted. SA de Robles did not direct the victim's attention to any particular photo. No evidence to the contrary was brought forward by the defense.

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page 14

     As shown by Exhibit 1 and, as supported by the testimony of SA de Robles, he read to Pantojas verbatim the statement required by the agency guidelines to be read to the person before the photo lineup is conducted.

     After viewing the photo lineup, the only conclusion which may be reached is that the guidelines were followed and that it is not in the least bit suggestive. Indeed, we find that the individuals in the six (6) photographs bear a remarkable resemblance to each other. All six (6) photos were in color. All six (6) photos showed the individuals from the collar up. All six (6) individuals in the photos had similar complexion. All six (6) individuals had a mustache. All six (6) individuals were wearing a police officer cap. All six (6) individuals had dark eyes. All six (6) individuals had similar size noses. All six (6) individuals appeared to be of the same age.

     In any event, even if there would have been some differences in the features of the individuals shown in the photo line up, matter we deny in this case, it is well settled that the men pictured in the photo arrays need not look exactly alike, as a lineups of clones is not required. *See* United States v. Galati, 230 F.3d 254, 260 (7th Cir. 2000) (approving photo array of six white men in their forties, with dark and relatively short hair); *see also* United States v. Moore, 115 F.3d 1348, 1360 (7th Cir. 1997) (approving photo array where photos of six young, clean shaven, black males with some hair, and some similar features); United States v. Sleet, 54 F.3d 303, 309 (7th Cir. 1995) (approving photo array where six men pictured were all black men about the same age).

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page 15

      All these factors significantly favor the existence of reliability as to the identification of defendant Torres and would not favor any grounds for suppression. Only identifications that are tainted because of circumstances **that give rise to a very substantial likelihood of irreparable misidentification** would be subject to suppression under due process concerns. Simmons v. United States, 390 U.S. at 384; Bouthot v. United States, 878 F.2d 1506, 1514 (1st Cir. 1989) (emphasis supplied).

      Nonetheless, defendant claims the photo array is suggestive because it was performed nine (9) months after the date of the events. Defendant has not presented any legal grounds to support his claim that the mere passage of nine (9) months, *per se*, makes a photo array impermissibly suggestive. While this is considerable, it is not fatal to a finding that the witnesses were still capable of making a reliable identification. *See, e.g.*, United States v. Jacobowitz, 877 F.2d 162, 168 (2d Cir. 1989) (ten month interval between crime and confrontation not enough, in light of other factors, to preclude in-court identification); United States v. Williams, 596 F.2d 44, 49 (2d Cir.1979) (32 month delay between crime and identification sufficiently offset by factors demonstrating reliability to support in-court identification). Moreover, a nine (9) month delay between the crime and the confrontation has been found not decisive. United States v. Marchand, 564 F.2d 983, 995 (2d Cir.1977); *see also* United States v. Barron, 575 F.2d 752 (9th Cir. 1978).

      The defense also claims, without any legal grounds in support thereof, that it took Pantojas ten (10) minutes to point out defendant in the photo lineup and this is impermissibly

long and points to a misidentification. We do not find this period of time unreasonably long specially when the victim in this case was specifically asked to analyze all the photos before pointing out to any suspect and he was told that a photo of the suspect may or may not be included.

Further, the defense argues the photo lineup was unduly suggestive because none of the photos used in the photo lineup showed the individuals with the characteristics of the perpetrators at the time of the commission of the offense and as described by the victim. In other words, defense counsel questioned the photo lineup used in this case because SA de Robles did not consider, when choosing the photos to include in the line up, the elements of the description provided by the victim such as the perpetrator having curly hair, holes in his face, brown complexion, height, wearing a black uniform, among others. This bald argument is ludicrous and warrants no in depth discussion. As previously stated, a simple review of the photo lineup shows that it is not in the least suggestive because all the individuals in the photos were shown similar in appearance.

**B.    Fingerprints.**

The defense argues the latent finger prints are unreliable and should be suppressed because they were taken from movable objects (Docket No. 44). We agree with the government that the case law cited by the defense is inapposite to this case because said case law deals with cases in which the only evidence against the suspect were the fingerprints. As the evidence in the suppression hearing showed in this case, this case does not rely on fingerprint

evidence alone inasmuch there are statements from the victim, other witnesses and toll records analysis.[4]  Moreover, we note that SA de Robles testified the documents produced by the victim (vehicle registration and customs form 6051) were in the possession of the victim.

In addition, the defense did not bring forth any credible evidence at the hearing to question the chain of custody of those documents, nor to impeach SA de Robles' testimony that those documents were in possession of the victim nor to question the government's theory that those fingerprints were impressed in those documents during the commission of the crime.

## CONCLUSION

Upon considering the evidence presented at the evidentiary hearing through the testimonies of SA de Robles, the complete lack of suggestive identification at the photo line up, as well as the totality of the circumstances in the instant case, it is recommended that defendant Torres' "Motion to Suppress Identification by Photo Array and Latent Prints" (Docket No. 44) be DENIED because the photo array was not so suggestive so as to create a risk of misidentification.[5]

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation.

---

[4] In fact, as testified by SA de Robles, defendant Torres had already been depicted as a suspect before the photo lineup and before the fingerprint analysis based on the toll records analysis.

[5] Since only under extraordinary circumstances identification evidence should be withheld from the jury, and there are no such circumstances herein present, it certainly is for the jury in this case to weight identification of this defendant.  Manson v. Brathwaite, 432 U.S. at 116.

United States of America v. Eddie Torres Concepcion [1]
Criminal No. 06-270 (JAG)
Report and Recommendation
Page  18

Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Latch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 21st day of June of 2007.

**S/CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**